## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

HELLO FARMS LICENSING MI LLC,
a Michigan limited liability company,

        Plaintiff/Counter-Defendant,

vs.

GR VENDING MI, LLC, a
Michigan limited liability company, and
CURA MI, LLC,
a Michigan limited liability company,

        Defendants/Counter-Plaintiffs.

Case No. 21-10499
Hon. Matthew F. Leitman
Mag. Patricia T. Morris

---

### HELLO FARMS'S REPLY IN SUPPORT OF NOTICE OF SUPPLEMENTAL AUTHORITY IN FURTHER SUPPORT OF ITS RESPONSES TO DEFENDANTS' RULE 50 MOTION (ECF No. 284) AND RULE 59 MOTION (ECF No. 285)

Curaleaf's response (ECF No. 307) to *Miller v. Suburban Mobility Authority for Regional Support (SMART)* illustrates rather than refutes the benefit of supplemental authority. As explained in *Miller*, courts must "'disregard all evidence favorable to the moving party that the jury is not required to believe.'" *Miller v. Suburban Mobility Auth. for Reg'l Transportation*, 2025 WL 1506082, at *1 (6th Cir. May 27, 2025) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Curaleaf fails to absorb this rule and then projects its misunderstanding broadly across many issues.

Willfully incongruous with *Miller* and preceding authorities, Curaleaf makes an abrupt, conclusory argument that Hello Farms failed to submit evidence showing "(1) this Court can enforce the contract at issue under federal law, (2) Hello Farms did not first materially breach the agreements by failing to comply with Michigan laws, (3) Hello Farms can recover damages for the 2021 harvest, or (4) Hello Farms can recover damages beyond the deposit amount." Resp. ECF No. 307 at PageID.15565.

But for elaboration on this single-sentence argument, Curaleaf offers five bullet points focused on point (3) having to do with damages for the 2021 harvest. Curaleaf asserts Hello Farms chose not to test its 2021 harvest, and that the 2021 harvest contained pesticides. *Id.* at PageID.15566.

Curaleaf offers no admissible evidence for the five bullet points, and each is repeatedly contradicted by the record. Curaleaf's argument thus walks squarely into *Miller's* teeth. Because there is record evidence that supports all the damages awarded, and Curaleaf fails to understand damages in anticipatory repudiation cases, Curaleaf's entire response is meritless. Curaleaf's other arguments are equally weak and likewise contradicted by the record, the very record that *Miller* and its preceding authorities require to be recognized, as they were by the jury when it deliberated quickly and decisively awarded Hello Farms more than $32 Million and awarded Curaleaf $0 on its counterclaim.

2

### A. Curaleaf assumes anything short of tests requires "speculation."

Curaleaf cites *Attard v. Citizens Ins. Co. of Am.*, 237 Mich. App. 311, 321, 602 N.W.2d 633, 639 (1999) to argue Hello Farms's 2021 damages are "purely speculative." This reveals a fundamental misunderstanding of what speculative means for purposes of damages.

In *Attard,* a no-fault plaintiff won a jury trial. The damages included both the value of attendant care benefits and separately the costs of massage therapy and a health club. *Id.* On appeal, the Court sustained the verdict as to attendant care but reversed as to the massage therapy and health club costs.

Plaintiff's attorney made the following statement during closing argument:

> [Y]ou have the massage therapy. And maybe I didn't do a good job, I didn't give you a price on that. And you have the health club. And if I didn't meet my burden in proving what that is, you can fill in [sic] if you know what a health club would cost for that. And if you can't, don't do it.

*Id.*

The Court of Appeals found damages for massage therapy and health club speculative because "the plaintiff presented no evidence concerning either the cost of either the therapy or the membership." *Id.* The Court also noted the "plaintiff's attorney admitted during his closing argument that he had failed to present **any evidence** of the cost of either the therapy or the membership and *invited* the jury to speculate concerning the award for these items." *Id.* at 321–22 (emphasis added).

Another useful case is *Am. Speedy Printing Centers, Inc. v. AM Mktg., Inc.*, 69 F. App'x 692, 698 (6th Cir. 2003). There, the Sixth Circuit affirmed a verdict granted on summary judgment for lost profits for a 20-year term in favor of a franchisor against a franchisee. The franchisor presented damages at summary judgment through an affidavit that explained a royalty audit and described the basis for calculations of royalties due and unpaid. *Id.* The court concluded the evidence relied upon provided sufficient support for the claim and awarded $115,616.12 for lost future royalties/profits. *Id.* at 694–95 (6th Cir. 2003).

The defendants appealed the district court's award of lost or future profits/royalties under the terms of the franchise agreement. *Id.* The defendant admitted that it failed to pay royalties yet objected to the projected lost profits suggested by the plaintiff based on historical printing volumes.

The Sixth Circuit disagreed and held that the plaintiff was entitled to all damages awarded for the full twenty years of the term of the agreement that remained. The Court acknowledged that damages "must be subject to a reasonable degree of certainty and cannot be based *solely* on conjecture or speculation," but held that "[t]he type of uncertainty which will bar recovery of damages is 'uncertainty as to the fact of the damage and not as to its amount ... [since] where it is certain that damage has resulted, mere uncertainty as to the amount will not

4

preclude the right of recovery.'" *Id.* (citing *Wolverine Upholstery Co. v. Ammerman,* 1 Mich. App. 235, 135 N.W.2d 572, 575–76 (1965)).

The Court went further to explain that, "[t]o create uncertainty as to the fact of future profits, therefore, AM Marketing must provide evidence that American Speedy Printing Center of Springfield–Southwest was likely to fail in some way, or become unprofitable, such that sales would end but without any breach of the franchise agreement." *Am. Speedy Printing Centers, Inc.*, at 699 (6th Cir. 2003). In other words, the Sixth Circuit rejected the idea that historical volumes that were projected to make a future lost profit award were somehow "speculative." The Court reiterated that "AM Marketing's mere suggestion that the continued success of the business was difficult to predict, or even Ms. Bennett's statement that the business had ceased operations, is not sufficient to create uncertainty as to the fact of future profits/royalties." *Id.*

The Court concluded, "[w]e agree with the district court that Allegra produced more than sufficient evidence to accurately estimate its lost future profits/royalties and that the $115.616.12 in damages awarded to Allegra was calculated to a reasonable degree of certainty and not based solely on conjecture or speculation. We affirm the district court's award of lost future profits/royalties under the terms of the franchise agreement." *Id.* at 699.

In another case, *Chelsea Inv. Grp. LLC v. Chelsea*, 288 Mich. App. 239, 256, 792 N.W.2d 781, 793 (2010), the Michigan Court of Appeals affirmed in relevant part a breach of contract verdict after a bench trial in favor of a developer against a municipality. The developer sued when it failed to realize on expected profits from a sale to Pulte which backed out after the municipality breached the contract to not hinder the development. The Court explained:

> At trial, Fisher testified that the total profit plaintiff would have gained if Pulte had completed Phase Two was $2,349,340, as well as an additional $1,504,068 had Pulte completed Phase Three.

> \*           \*           \*           \*

> There is no merit to defendants' contention that the damages were speculative because Pulte did not know whether it would complete Phase Two. In support, defendants cite the testimony of Pulte's representative, Steven Atchinson, who indicated that Pulte was uncertain whether it would acquire more than half the Phase Two lots. However, a review of Atchinson's deposition testimony reveals that Pulte was ready and willing to proceed with Phase Two; the only reason Pulte did not know whether it would complete Phase Two was that the city had not approved plaintiff's site plan and the city had only offered Pulte half the Phase Two lots. Accordingly, the evidence provided permitted a reasonable basis by which to calculate damages, and the trial court did not clearly err. Defendants are not entitled to any relief based on their claims of error raised on appeal.

*Id.* at 256 (2010).

Again here, the Courts used the historical evidence that existed to establish an evidentiary basis, make reasonable inferences, and award damages in a number of dollars that the plaintiff should be awarded.

6

**B. Here, the record evidence supports the award.**

Hello Farms delivered Lots of Biomass with Passing COAs, each above 12% THC potency for the entire 2020 harvest, consisting of more than 16,300 pounds. See ECF No. 249, PageID.13505–08. Hello Farms grew more than 37,490 pounds in 2021 and sold the entire 2021 harvest at above market prices, thereby sustaining more than $34 Million in damages as testified to by various witnesses. *Id.* at PageID.13509–11, PageID.13521–27.

In 2021, Hello Farms had the same grower, the same farm, the same employees who worked in the same field, and it had the same output from the plants (but more weight). ECF No. 252, PageID.13814, 169:16-24. Hello Farms had the same processor, Choice, process its 2020, 2021, and 2022 harvests. ECF No. 247 at PageID.13372, 23:6-16, 29:20-32:23, 37:23-38:3. The weather in 2021 was more favorable to growing. ECF No. 252, PageID.13801, 156:1-6. And Hello Farms *also* had a handful of COAs for the 2021 harvest, all of which but one was a Passing COA with no retest. ECF No. 247 at PageID.13390, 41:24-49:11.

As this Court already held, prior performance and Curaleaf's earlier breach shows Hello Farms has evidence that it *could have performed had Curaleaf not breached.* That is the sole question. Here, that evidence shows Hello Farms is able to obtain and was properly awarded its full damages without having to incur costs

7

for full panel test results for the 2021 harvest, which costs would have caused a failure to mitigate.

Curaleaf critically ignores that the jury found Curaleaf breached the contract before the 2021 harvest was planted. Curaleaf's repetition of its argument—that anything short of test results necessarily requires "speculation"—is still wrong. It is no better today than when it was previously rejected and further shows a lack of understanding what the term "speculation" means as to damages.

If Hello Farms was not legally required to grow a harvest at all in 2021 to obtain contract damages for the entire two-year minimum term of the contract, and, in that scenario, would have had the benefit of prior performance as the evidentiary basis to make reasonable inferences to show the *ability* to perform for 2021 had Curaleaf not breached and therefore obtain damages for 2021, then certainly *actually growing* the crop and selling it at an above-market cost, all without Curaleaf showing evidence of total loss (or any inability to perform) is enough to sustain the amount of the jury's award at this stage. This is particularly so given the immediately prior year's performance of an *entire* harvest. It is likely noteworthy that Curaleaf never sought to test the 2021 harvest itself during discovery, so as to build any defense.

Curaleaf simply ignores these facts, too. The foregoing evidence adduced and presented by Hello Farms at trial is sufficient evidence upon which the jury could

8

conclude—and did conclude—that Hello Farms could have performed and was entitled to its damages award including through the 2021 harvest.

Curaleaf's conjecture that some portion of the 2021 harvest was contaminated by pesticides that drifted over from a nearby farm and that there were insufficient proofs on the THC levels of the 2021 harvest is both meager and unpersuasive. First, Hello Farms does not have to show the actual THC of the 2021 harvest. It is allowed to use other circumstantial evidence, which the jury overwhelmingly followed, as noted above. That is what parties do in anticipatory repudiation cases. That is exactly what happened in *Speedy Printing Centers, Inc.*, at 699 (6th Cir. 2003) and *Chelsea Inv. Grp. LLC*, at (2010), as noted *infra*. Hello Farms is surprised to have to make that observation in this case.

Second, Curaleaf then had the burden to show an inability to perform or show total loss but failed in that effort. The jury did not buy the "drift" argument. Thus, it is not as though Curaleaf did not try to present evidence that the 2021 harvest was bad. In contrast, it is that the jury disagreed with it. "[I]t is the jury's function to weigh competing evidence." *People v. Oros*, 917 N.W.2d 559, 568 (Mich. 2018). Here, the jury properly found in Hello Farms' favor. There is no evidentiary basis to set that aside.

Third, Curaleaf offers no law to explain how, after Curaleaf breached and repudiated, it thinks Hello Farms was still obligated to test the 2021 harvest to obtain

2021 harvest damages. Tests were not required. *See Mod. Globe*, 340 Mich. at 669 ("The law does not require the doing of a useless act."); *see also* Restatement (Second) of Contracts § 255 cmt. a. ("No one should be required to do a useless act, and if, because of a party's repudiation, it appears that the occurrence of a condition of a duty would not be followed by performance of the duty, the non-occurrence of the condition is generally excused.").

Curaleaf myopically ignores this rule. Curaleaf ignores that it repudiated the contract. And Curaleaf then fails in its burden to show any inability to perform or total failure. That is why Curaleaf comes to various abrupt and incorrect conclusions The jury's verdict was supported by evidence.

Finally, Hello Farms's cannabis expert, Bart Kupczyk, the only cannabis expert presented at trial, testified that Hello Farms received an above market price for its 2021 harvest. ECF No. 241, PageID.13053, 27:9-23. He testified oil liters were selling for about $1,200 in late 2021. Hello Farms, however, sold its liters for $1,500 each and Hello Farms sold them in a reasonable amount of time. *Id.* at 27:9-23, 31:8-19.

This testimony complimented proofs that Hello Farms proved the size of its harvest in 2020 and in 2021, had test results for 2020, and showed the ability to perform in 2021 nearly if not identical to 2020, except without the no-longer-required test results. There is not only no evidence to suggest Hello Farms could not

have performed in 2021, to the contrary, the evidence shows just the opposite is the case, if not obviously the case.

### C. Curaleaf fails its burden to set aside the verdict.

It is a "weighty burden" to reverse a denial of a motion for judgment as a matter of law. *In re Lewis*, 845 F.2d 624, 632 (6th Cir. 1988). "A judgment *n.o.v.* may not be granted unless reasonable minds could not differ as to the conclusions to be drawn from the evidence." *Id.* (citing *Gillham v. Admiral Corp.,* 523 F.2d 102 (6th Cir.1975), *cert. denied,* 424 U.S. 913, 96 S.Ct. 1113, 47 L.Ed.2d 318 (1976)). An appeals court is not to "weigh the evidence, pass on the credibility of witnesses [and] substitute its judgment for that of the jury." *Toth v. Yoder Co.,* 749 F.2d 1190, 1194 (6th Cir.1984). "Instead, we must view the evidence in the light most favorable to the opposing party, drawing all reasonable inferences in her favor." *Id.; Morelock v. NCR Corp.,* 586 F.2d 1096, 1104–05 (6th Cir.1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979). "The trial judge below—even while personally disagreeing with the jury's verdict—recognized the seriousness of toppling a jury verdict and denied Sears' motions for a judgment *n.o.v.* and new trial. We agree with the district court that the jury was presented with sufficient evidence to reach its conclusion." *In re Lewis*, 845 F.2d 624, 632 (6th Cir. 1988).

As noted above, the legions of evidence presented at trial demonstrates Curaleaf misunderstands what the standard is to set aside a verdict, or what

"speculation" actually means with respect to damages. In any prior material breach or anticipatory repudiation scenario, the jury uses evidence up until the time of the breach to determine whether it can infer if the plaintiff could have performed, but for the breach. *See American Anodco, Inc. v. Reynolds Metals Company,* 743 F.2d 417, 424 (6th Cir. 1984) ("It is clear that loss of future profits is permitted as an element of damages in breach of contract actions when they can be established with reasonable certainty."). In *American Anodco,* the Sixth Circuit upheld an award for future lost profits, despite the fact that the contract "listed no quantity. . . and was silent as to the duration of the order." *Id.* at 419. In *Lorenz Supply Co. v. American Standard, Inc.,* 100 Mich. App. 600, 300 N.W.2d 335 (Mich. App. 1980), *aff'd,* 419 Mich. 610, 358 N.W.2d 845 (1984), the Michigan Court of Appeals held:

> Lost profits resulting from a breach of contract are proper items of loss to be considered by a jury in determining damages. However, lost profits must be subject to a reasonable degree of certainty and cannot be based ***solely*** on conjecture and speculation. This does not imply that lost profits must be determined to a mathematical certainty. Even where lost profits are difficult to calculate, and are speculative to some degree, they are still allowed as a loss item.

*Id.* (emphasis added).

Doubts as to the certainty of damages must be resolved against the wrongdoer. In *Howard v. City of Melvindale* 27 Mich. App. 227, 183 N.W.2d 341 (1970), *abrogated on unrelated grounds*, the Court stated:

> On the principle that where a litigant can show he has been damaged, but his damages cannot be measured with certainty, that it is better that he recover more than he is entitled to than less, the rule in Michigan is that the risk of the uncertainty is cast upon the wrongdoer, not the injured party. *Id.*

*See also, Lorenz Supply,* 100 Mich. App. at 611–612, 300 N.W.2d 335 (citations omitted). In *Lorenz Supply,* an award of future losses was calculated based on a history of past sales. *Id.* at 613, 300 N.W.2d 335. In *Fera v. Village Plaza, Inc.,* 396 Mich. 639, 242 N.W.2d 372 (1976), a case involving a breach of a commercial lease, the Michigan Supreme Court affirmed an award for future lost profits was determined with reasonable certainty *even though the business in question was prevented from ever opening. Id.* at 646–48, 242 N.W.2d 372.

As also held in this court in *Stonemen Grp., Inc. v. Metalforming Techs., Inc.*, 362 F. Supp. 2d 896, 903 (E.D. Mich. 2005), damages are not speculative simply because they cannot be ascertained with mathematical precision. *See also, Godwin v. Ace Iron & Metal Co.,* 376 Mich. 360, 368, 137 N.W.2d 151 (1965); *Hofmann v. Auto Club Ins. Ass'n*, 211 Mich. App. 55, 108, 535 N.W.2d 529, 555 (1995). In contrast, a damage award is sufficient if a reasonable basis for computation exists, although the result be only approximate. *McCullagh v. Goodyear Tire & Rubber Co.,* 342 Mich. 244, 255, 69 N.W.2d 731 (1955).

What Curaleaf simply does not understand is that the certainty requirement is relaxed where the fact of damages has been established and the only question to be

13

decided is the amount of damages. *Bonelli v. Volkswagen of America, Inc.,* 166 Mich. App. 483, 511, 421 N.W.2d 213 (1988). "When the nature of a case permits only an estimation of damages or a part of the damages with certainty, it is proper to place before the jury all the facts and circumstances which have a tendency to show their probable amount." *Body Rustproofing, Inc. v. Michigan Bell Tel. Co.*, 149 Mich. App. 385, 391, 385 N.W.2d 797, 800 (1986). Questions regarding what damages may be reasonably anticipated are issues better left to the trier of fact. *Wendt v. Auto Owners Ins. Co.,* 156 Mich. App. 19, 26, 401 N.W.2d 375 (1986).

Curaleaf's demand for absolute certainty and exactness has been rejected roundly by the Michigan courts; "the law permits some level of uncertainty to be resolved by the trier of fact in the context of damage awards." *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83, 103, 706 N.W.2d 843, 856 (2005).

As early as 1863, the Michigan Supreme Court stated that "when, from the nature of the case, the amount of the damages cannot be estimated with certainty, or only a part of them can be so estimated, we can see no objection to placing before the jury all the facts and circumstances of the case, having any tendency to show damages, or their probable amount; so as to enable them to make the most intelligible and probable estimate which the nature of the case will permit." *Allison v. Chandler,* 11 Mich. 542, 555 (1863).

Here, as was the case in *Speedy Printing Centers, Inc.*, at 699 (6th Cir. 2003) and in *Chelsea Inv. Grp. LLC*, at (2010), Hello Farms properly used circumstantial evidence with which the jury overwhelmingly agreed to show an ability to perform after Curaleaf's anticipatory repudiation. That is the opposite of what happened in *Attard* as to the health club and massage therapy costs where there was *no* evidence in the record and speculation was invited. Here, there was and is a more than sufficient evidentiary basis for the verdict based on past performance and on-going similarities at the farm level in the second year, and even expert testimony.

One would expect Curaleaf, under this theory that violates the basic rule of how damages are assessed in anticipatory breach cases to have *some* legal authority of its argument. But it none. Nothing. Curaleaf insists that the *only* way to obtain the damages awarded here was to test, but the Court already correctly held that tests were not needed. That has long been the law and is controlling as stated in the numerous above cited authorities. Despite seeing Hello Farms's evidence up to and after the time of its anticipatory repudiation, Curaleaf could not present *any* evidence in discovery or at trial that was believed that suggested Hello Farms could not perform in 2021. Why would the prior year, Curaleaf's breach, the market drop, and second year's growth, and the high price obtained by Hello Farms during mitigation not be enough to show the ability to perform and therefore sustain for the jury's award?

15

**D. Curaleaf's "evidence" is based on speculation.**

Ironically, the most speculative aspect of either party's arguments is Curaleaf's argument that Hello Farms's farm is located near cornfields from where pesticides *may* have drifted because they *can be* carried by wind. For this assertion, Curaleaf cites ECF No. 252, PageID.13731 (Trial Transcript 7-A from January 27, 2025) that contains cross-examination from Brian Farah.

Curaleaf then abruptly concludes with no analysis whatsoever that there is "no evidence" to support the idea that Hello Farms could have performed the contract in 2021 for the 2021 harvest. ECF No. 307, PageID.15566. Curaleaf then declares there is nothing "beyond speculation" to back up the damages award. This conclusion is wholly ignorant of the record as detailed above.

In fact, it is Curaleaf's own witnesses who conceded this theory (one the jury rejected) is speculative. Curaleaf's CEO Joe Bayern testified that Curaleaf and Choice (the buyer after Curaleaf breached) both used *all* of Hello Farms' product that was delivered. *See* ECF No. 234, PageID.12364, 42:1-3 (Bayern: "A. Yes, at this point it's probably been used. Q. That includes down streamed to consumers? A. Yes."). Bayern admitted he has no evidence in support of his claim that the 2021 product was bad quality or that it was sold for a below-market price because it was of a poor quality. *See* ECF No. 234, PageID.12365–66 ("Q. Do you have any piece of paper from any of these people backing this up? A. I don't have it. Q. You don't

have any actual evidence to support the idea that Brian's product from the 2021 harvest and the 2020 harvest was not actually paid at a market price? A. I only have the conversations with the team at Choice. Q. I'm not asking for hearsay, I'm asking for evidence? A. That's what I'm telling you, ***I don't have the evidence***.") (emphasis added).

Bayern went on to admit that his companies consumed all of Hello Farms's product and would not have done so if it was not of a high quality. Bayern testimony at ECF No. 234, PageID.12367 ("Q. You are not going to sit here and tell me when you are the CEO of Choice Labs, turned into Glorious, if you didn't have good stuff, you wouldn't have put it in the supply chain, right? A. That's correct. Q. You wouldn't pay for it if it wasn't good stuff? A. That's right. Q. Thank you.").

Curaleaf's attempt to cross-examine Jacob Katz of UHY also reiterated that the only one speculating about Hello Farms product in 2021 being any different from 2020 is, in fact, Curaleaf. *See* Katz testimony on cross at ECF No. 260, PageID.13910–11 ("Q. Right. And if you had that information, for example, from test results from 2021, you would have had to adjust your expected income for 2021, right? A. That's pretty speculative, but I will concede this, there is a path under which, if testing was performed in 2021 and was able to indicate that there were problems that did not meet the contracts requirements and that CURA exercised its remedy, then I would absolutely adjust it, but in everything I reviewed, none of the

17

-- none of that occurred by the breaching party. They did not, to my knowledge, reject the 2021 harvest, in part or in whole, they just didn't buy it."). Curaleaf even agreed to the jury instruction on damages. ECF No. 263, PageID.14147 at 87 of the transcript, lines 3–18. The jury simply followed those instructions.

What is speculative are Curaleaf bullet points at ECF No. 307, PageID.15566—that some unidentified "drift" from some unidentified "nearby" cornfield tainted Hello Farms's 2021 harvest.[1] As explained in *Miller*, courts must "'disregard all evidence favorable to the moving party that the jury is not required to believe.'" *Miller*, 2025 WL 1506082, at *1 (6th Cir. May 27, 2025) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). That is what happened here. The jury was not required to believe the possibility that "drift" from a nearby farm occurred.

---

[1] The truth is that there was evidence of pesticide in the record. Of the six R&D COAs from the 2021 harvest, one of those COAs showed a detection for a pesticide. The detection was ***below*** the action limit, however, and therefore would still have been a Passing COA under the contract. ECF No. 247 PageID.13392-98. A single pesticide detection below the action limit in one of six COAs from a harvest that followed the immediately prior year of passes, that used all of the same relevant inputs, and which was 100% sold above market price is *proof positive* that Hello Farms showed it could have performed and a far cry from what Curaleaf was required to prove to avoid damages. Curaleaf failed not only in its obligation to show "total loss" of the harvest such that Hello Farms could not have performed in 2021, but it also failed to show ***any evidence*** that 2021's harvest would be any different than 2020's harvest.

18

### E. Curaleaf's federal public policy, state regulatory, and deposit arguments were each soundly rejected by the jury and the court.

With respect to a federal court's ability to enforce a cannabis contract under federal law (the public policy defense), Curaleaf is trying to place the burden on the wrong party. The public policy defense is *Curaleaf's* defense, not Hello Farms's claim. Curaleaf presented no evidence in support of its public policy defense and, therefore, it is not properly considered on a Rule 50 motion—that can only attack the sufficiency of evidence. *See, e.g.*, *Weisgram v. Marley Co.*, 528 U.S. 440, 447–48 (2000); *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (citing 9B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2540 (3d ed. 2008) ("When reviewing a district court's grant or failure to grant judgment as a matter of law, a court of appeals only may consider evidence that was admitted at trial.").

More interestingly, Curaleaf (the world's largest marijuana operator) fails to read or understand the last decade plus of Congressional action relating to marijuana.[2] The Appropriations Acts are the relevant Acts. They have been for over a decade. They prove federal policy is to defer to the States—that is literally what

---

[2] Paradoxically, Curaleaf has officially challenged the IRS on how it is taxed. *See* https://mjbizdaily.com/marijuana-msos-set-up-high-risk-fight-with-irs-over-280e/. This position for tax purposes is that marijuana products are not illegal. This position is in direct conflict with the position taken in this case (at least at times when Curaleaf is not seeking an award on its counterclaim), and is setting up a judicial estoppel argument, and reiterates why the illegality defense "lies ill in the mouths" of those who speak it.

they express. It is without any analytical offering of the slightest effort that Curaleaf ignores the last decade of statutes on the topics and focuses on the anachronistic CSA as if 2020 was 1970. If it were 1970, how and why was Curaleaf formed?[3] How does it do business in 23 States? *Id.* How does it have 23 different cultivation farms in this county? *Id.* How does it have 30 processing facilities in this country? *Id.* How does it have more than 150 retail locations in this country? *Id.* How is it headquartered in the United States where its prime shareholder is domiciled? *Id.* Why is not the DOJ prosecuting *either* medicinal or recreational sales that occur in frequencies of *hundreds of million* occurrences for *hundreds of billions of dollars* every year?

Curaleaf's disguised summary judgment reconsideration request lacks merit both in substance and as a Rule 50 motion.[4]

Likewise, Curaleaf's ignorance of the Appropriation riders extends into the post-verdict motions in this case. The evidence at trial was overwhelming that the contract was only for *medical* marijuana and *Curaleaf was the one* who was going to "convert" it to recreational product to retail. Chris Ramos, the leader of Curaleaf in Michigan, testified that he knew Hello Farms "was a medicinal farm." ECF No.

---

[3] https://ir.curaleaf.com/2025-05-08-Curaleaf-Reports-First-Quarter-2025-Results.
[4] Curaleaf's lawyers also have historically argued in favor of enforcing state marijuana laws. *Attitude Wellness, LLC v. Vill. of Pinckney*, 606 F. Supp. 3d 624, 628 (E.D. Mich. 2022).

229, PageID.11818: 21–24 (relying on Plaintiff's Exhibit 152 admitted into evidence). He testified Hello Farms was selling Curaleaf only medicinal cannabis. *Id.*; *see also,* ECF No. 229, PageID.11819:18–22. His testimony was clear that Curaleaf, not Hello Farms, was the only party "transferring" the cannabis (marked "medical" by Hello Farms) to become "adult use" by Curaleaf. *Id.* Whitney Conroy, the deal architect, testified Hello Farms was a medical only farm, and that Curaleaf was expected to be the only party that would "transfer" the product from medical status to recreational status and would do so only on its own watch. ECF No. 231, PageID.12018 and 12020. Brian Farah, CEO of Hello Farms, testified that in 2020, Hello Farms was a medical only farm and that that changed only *after* Curaleaf breached. ECF No. 247, PageID.13439: 19–25. Again, Curaleaf's arguments are fully contradicted by the record.

That Hello Farms obtained a recreational grow license in 2021, after Curaleaf first materially breached by failing to pay for the 2020 harvest, says nothing of *this contract*. ECF No. 247, PageID.13439-40, 90:19-91:5. Curaleaf provides no authority that Hello Farms's mitigation efforts of adding an adult use license means it cannot recover for Curaleaf's breach. There is no such authority. A contract does not become legal by a change in the law that was made after the contract was signed, just as no *ex post facto* law renders a contract that is not against public policy when signed suddenly against public policy based on later enacted legislation.

21

And even beyond the Appropriations Acts, Curaleaf misunderstands that a public policy defense does not rest on Hello Farms's alleged compliance with State of Michigan regulations (particularly here where the State of Michigan never has taken *any* action to deprive Hello Farms of its license). The effectiveness of the contract does not turn on Curaleaf's view of whether Hello Farms *ever* acted in a way that Curaleaf thinks theoretically are inconsistent with state regulations. As the First Circuit explained in *United States v. Bilodeau*, 24 F.4th 705 (1st Cir. 2022), criminal prosecution with a "strict" compliance standard is absurd. *Id.* at 715. As noted, under Maine law, a primary caregiver, for each patient, can have up to six mature flowing plants, twelve female nonflowing plants, and unlimited marijuana seedlings (under twelve inches). *Id.* at 708-09. The Court recognized that it would be very easy for a primary caregiver to fall into "technical noncompliance," for example when just one seedling grew higher than twelve inches. The Court stated:

> With federal prosecution hanging as a sword of Damocles, ready to drop on account of any noncompliance with Maine law, many potential participants in Maine's medical marijuana market would fasten fearful attention on that threat. The predictable result would be fewer market entrants and higher costs flowing from the expansive efforts required to avoid even tiny, unintentional violations. *Bilodeau*, 24 F.4th at 713.

*De minimis* violations do not deprive criminal defendants of the riders' protections. This rule is even more fitting here. Hello Farms followed the contract. Curaleaf did not. While Hello Farms also complied with Michigan law, even if there

22

was any technical violation, that would not have anything to do with a contract defense.

Finally, with respect to whether the Deposit was an exclusive remedy, the facts and the jury spoke, and spoke decidedly. Hello Farms won; Curaleaf lost. As Sciarrone testified, "[t]here were multiple intentions of the deposit." ECF No. 234, 93:15, PageID.12415. "[I]t was the initiating of paying for goods, it was also security if the agreement ultimately broke down, . . . number of things." *Id*. at 93:17-21. In other words, it is anything Curaleaf needs it to be. The clearest testimony came from Farah. He testified that the deposit was never negotiated as a sole and exclusive remedy, "not even remotely." ECF No. 247 Vol. 6B PageID.13373 at 24:18-21.

Curaleaf did not and cannot show that Hello Farms ever had an understanding—or even contemplated the Deposit as liquidated damages and an exclusive remedy. The jury agreed with Hello Farms and there is no basis to set aside the verdict.

All said, Curaleaf is focused on the quality of the 2021 harvest. Yet, the facts as shown and decided at trial are that Hello Farms could have performed and only did not test because of Curaleaf's earlier breach, repudiation, and refusal to provide adequate assurance, despite demand therefor. ECF No. 36, Page2816 at ¶¶ 56–57 and ECF No. 17–7, PageID.1429–30. Hello Farms's 2021 harvest like 2020 was of a very high quality, and Curaleaf entirely misunderstands the UCC and when

23

damages are deemed "speculative." As explained more fully in Hello Farms's response to Curaleaf's Rule 50 motion, and above, under the UCC, after Hello Farms made its case, Curaleaf had the burden to prove Hello Farms acted in a "commercially unreasonable manner" or could not have performed when it sold its 2021 harvest. *See* M.C.L. § 440.2704(2); *see also* Resp to Curaleaf's Rule 50 Mot. (ECF No. 284) at PageID.15285.

Curaleaf has never attempted to make that showing because the facts simply do not support it. Instead, in the end, Curaleaf makes passing reference to its Rule 59 motion in which it seeks a new trial based on what it believes were improper statements made by Hello Farms's attorneys. More telling is that Curaleaf acknowledges that the Sixth Circuit affirmed denial of the Rule 59 motion in *Miller* because the alleged problematic statements were, like here, either not problematic or were isolated and proper. ECF No. 307, Resp. at PageID.15566-67.

Hello Farms's attorney statements were no different for the reasons explained in Hello Farms's Response brief to Curaleaf's Rule 59 motion. ECF No. 285. The Sixth Circuit's recent ruling thus provides additional support for the denial of Curaleaf's Rule 50 and Rule 59 motions.

24

Respectfully Submitted,

/s/ *Patrick C. Lannen*
STINAR GOULD GRIECO HENSLEY
Patrick C. Lannen (P73031)
Erik Johnson (P85017)
Brooke A. Nosanchuk (P86293)
550 W. Merrill St., Suite 240
Birmingham, Michigan 48009
(248) 566-6215
Patrick@sgghlaw.com
Erik@sgghlaw.com
Brooke@sgghlaw.com

Date: July 25, 2025

## Proof of Service

The undersigned certifies that on July 25, 2025 a copy of the foregoing document was served upon the attorney(s) of record in this matter at their stated business address as disclosed by the records herein via:

☐ Hand delivery        ☐ Overnight mail
☐ U.S. Mail            ☐ Facsimile
☐ Email                ☒ Electronic Filing System

I declare under the penalty of perjury that the foregoing statement is true to the best of my information, knowledge and belief.

*/s/ Patrick Lannen*

25

60200109.1